## WINGO v. PARKER.

1. The law of force in this State in 1858 did not authorize a justice of the peace in another State to take renunciation of a wife's inheritance, and a renunciation so taken was invalid.
2. A wife did not release her inheritance by a relinquishment of "all her interest and estate," the word "inheritance" being essential under the statute.
3. A renunciation of inheritance might be taken by a notary public in this State in 1859, but when taken on the seventh day after the execution of the deed, the wife's inheritance was not released.
4. A renunciation of inheritance is ineffectual when not accompanied by a certificate "that the woman did declare that the release was positively and *bona fide* executed at least seven days before such her examination."
5. A failure to record a renunciation of inheritance during the wife's lifetime, does not invalidate the instrument as to the parties, or others having actual notice.

6. A husband, as heir-at-law of his wife, cannot assert title to her inheritance attempted to be conveyed by him in her life-time, by deed with general warranty.

7. Whether a paper in form a deed in an absolute conveyance or only a power of attorney, cannot be adjudicated in the absence of the heirs of the grantee.

Before FRASER, J., Spartanburg, June, 1881.

Action for partition commenced in May, 1879, by James A. Wingo and his children against M. Parker and W. F., her husband, and Elizabeth Davis. The case turns principally upon the construction of the following papers, purporting to be renunciations of inheritance, to wit:

I. STATE OF FLORIDA, Madison county—I, John W. Anderson, do hereby certify unto all whom it may concern, that Elizabeth Davis, the wife of the within named Noah Davis, did this day appear before me, and upon being privately and separately examined by me did declare that she did at least seven days before the examination actually join her husband in executing such release, and did then and still freely and voluntarily and without any manner of compulsion dread, or fear of any person or persons whomsoever renounce, release and forever relinquish unto the within named James Vernon his heirs and assigns all her interest and estate of in or to all and singular the premises within mentioned and released, and further, said Elizabeth Davis did declare that the within deed or conveyance was positively and *bona fide* executed at least seven days before her present examination.

ELIZABETH DAVIS.

Given under my hand and seal this 19th day of August, 1858.
(Signed,)            JOHN W. ANDERSON, [L. S.]
                                        . Justice of the Peace. ·

II. THE STATE OF SOUTH CAROLINA, Spartanburg county— I, Simpson Bobo, do hereby certify unto all whom it may concern, that Rachel Wingo, the wife of the within named James A. Wingo, did this day appear before me, and upon being privately and separately examined by me, did declare that she did on the fifth instant join her husband in executing the within deed, and that she did then and still does freely, voluntarily and without any compulsion dread or fear of any person or persons

whomsoever, renounce, release, and forever relinquish unto the within named O. E. Edwards, his heirs and assigns, all her interest and estate of inheritance and also all her right and claim of dower, of in or to all and singular the premises within mentioned and released.

Given under my hand and seal this twelfth day of Nov., Anno Domini, 1859.

(Signed,)        RACHEL WINGO, [L. S.]
SIMPSON BOBO, [L. S.]
    Not. Pub.

Other facts of the case and the Circuit decree are sufficiently stated in the opinion.

*Messrs. Bobo & Carlisle*, for appellants.

*Messrs. J. S. R. Thomson* and *S. T. McCravy*, contra.

March 8th, 1883.    The opinion of the court was delivered by

MR. JUSTICE MCIVER.    This proceeding was commenced for partition of certain real estate in the possession of appellants, and thereupon a controversy arose as to the title, growing out of the following facts :

The land in question was devised by Samuel Brice to his wife, Nancy, for life, and at her death to his two children, Rachel and Elizabeth.    Rachel intermarried with the plaintiff, James A. Wingo, and died intestate in 1864, leaving as her heirs-at-law her husband and her three children, who are the plaintiffs in this action.    Elizabeth intermarried with Noah Davis, who died since the commencement of this action, to which he was a party defendant, but an order has been taken, by consent, that " the name of Noah Davis as defendant herein be struck out, and that the action do proceed as though he had never been a party thereto."    Nancy Brice, the life-tenant, died in 1877 and this action was commenced in 1879.

The appellants, Parker and wife, while not being able to show title in themselves, have undertaken to show that the title passed out of Rachel Wingo in her life-time, and hence that the plaintiffs, as her heirs, have no right to claim partition, and also that the title has passed out of the defendant, Elizabeth Davis, who

joins in the prayer for partition, and hence that the complaint should be dismissed.   For this purpose appellants rely upon two deeds, one from Noah Davis and wife, Elizabeth, to J. J. Vernon, dated June 15th, 1858, upon which is endorsed a certificate which is claimed to be a renunciation of her inheritance, taken by a jus- tice of the peace in the State of Florida, where Mrs. Davis then resided, and the other a deed from Nancy Brice, James A. Wingo and wife, Rachel, to O. E. Edwards, dated November 5th, 1859, upon which is endorsed a certificate which is claimed to be a renunciation of Mrs. Wingo's inheritance, taken by a notary public in this State on November 12th, 1859.   The evidence tended strongly to show that this last-mentioned deed, which contained the usual clause of warranty, was executed simply for the purpose of enabling Edwards to collect the rents and sell the property when an opportunity offered, the grantors being about to remove to the West, and that it was really intended to be a power of attorney rather than an absolute conveyance.

The Circuit judge held : *First.* That the deed to Vernon was insufficient to pass the title of Mrs. Davis, on account of two defects in the renunciation of inheritance : (1). That it was not taken by any officer authorized so to do ; (2). That it did not comply with the requisitions of the statute, inasmuch as it did not purport to release " the inheritance " of Mrs. Davis, but only " all her interest and estate," and, therefore, that Mrs. Davis, her husband having died, was entitled to her share of the land.   *Second.* He held that the deed from Nancy Brice, James A. Wingo and wife to Edwards, was not sufficient to pass the title of Mrs. Wingo on account of several defects in the renun- ciation of inheritance endorsed upon it : (1). Because it was taken by a notary public, who had not then any authority so to do ; (2). That full seven days had not elapsed after the execu- tion of the deed, before the renunciation of inheritance was taken, the deed having been executed on the fifth, and the renunciation taken on the 12th day of November, 1859 ; (3). The deed, with the renunciation of inheritance endorsed upon it, was never recorded until after the commencement of this action, and after the death of Mrs. Wingo, and of the grantee Edwards, and, therefore, that such of the plaintiffs as are the children

of Mrs. Wingo are entitled to share in the land. *Third.* That if James A. Wingo can make it appear that the deed to Edwards was intended only as a power of attorney, he is also entitled to his share, as heir of his wife; but if it shall be made to appear that said deed was intended as an absolute conveyance, then his warranty will bar his right to a share in the land, and the heirs or devisees of Edwards should be made parties for the purpose of determining this question.

From the decree Parker and wife appeal on the following grounds: That the Circuit judge erred, 1st. In holding that the deed of Noah Davis and wife to J. J. Vernon, executed in the State of Florida, and the renunciation of the wife "of all her interest and estate" before a justice of the peace in said State, was not sufficient to convey all the interest of the husband and wife in the premises. 2d. In holding that the deed of James A. Wingo and wife to O. E. Edwards, and the renunciation of inheritance by the wife, before a notary public, was not sufficient to convey all the interest of the husband and wife in the premises. 3d. In not holding that whatever interest James A. Wingo may have had in the premises was conveyed out of him by his warranty clause contained in the deed.

At the time the conveyances which are here brought into question were executed, a married woman could not convey her estate of inheritance unless she followed with scrupulous exactness the provisions of the statute conferring that power upon her. This will be seen by reference to the cases of *Brown* v. *Spand,* 2 *Mill. Con. R.* 12; *Hays* v. *Hays,* 5 *Rich.* 38; *McCreary* v. *McCreary,* 9 *Rich. Eq.* 34; *McLaurin* v. *Wilson,* 16 *S. C.* 402. As is said in *Pitts* v. *Wicker,* 3 *Hill* 199: "The right of inheritance of a married woman is protected with jealous vigilance by the law. She cannot be deprived of it but by a scrupulous adherence to the statute providing the mode in which a married woman may part with her inheritance in land."

The act of 1795, 5 *Stat.* 257, which was the law in force at the date of these renunciations, declared, in the most specific terms, the requisites necessary to a valid renunciation of inheritance by a married woman, and the question for us to determine

is, whether the renunciations relied on in this case are in accordance with the provisions of that act.

First, as to the renunciation on the deed to Vernon. We are not aware of any statute which confers upon a justice of the peace of another State the power to take renunciations of inheritance of land in this State, and in the absence of any such statute, a renunciation taken by a justice of the peace in Florida, has no more force and effect here than if taken by any other officer, or even by a private citizen of that State. The only officers competent to take such renunciations are those named in the act of 1795, and as a justice of the peace of another State is not there named, his act in taking such a renunciation is a mere nullity.

Another defect in this certificate is that it does not purport to release Mrs. Davis' "inheritance," but only "all her interest and estate," which may be something less than an estate of inheritance. The act of 1795 contains two distinct provisions—one by which a wife may renounce her dower, which is but a life-estate, and the other by which she may renounce and release her inheritance, the fee-simple. In the former, the words used are, "all her interest and estate, and also all her right and claim of dower," while in the latter the provision is for the release of "all her estate, interest and inheritance." We think it plain, from what is said by Nott, J., in *Brown* v. *Spand, supra,* and by O'Neall, J., in *Hays* v. *Hays, supra,* that the word "inheritance," like the word "heirs" in a deed, is a material word, necessary to be used in order to carry the fee. We agree, therefore, with the Circuit judge, that Mrs. Davis, since the death of her husband, is entitled to her share of the land.

Next, as to the alleged renunciation of inheritance by Mrs. Wingo. The first objection urged against this renunciation—that it was taken by a notary public who was not one of the officers before whom the statute provided that renunciation of inheritance could be taken—we do not think well founded. It is true that a notary public is not one of the officers mentioned in section 2 of the act of 1795, but a justice of the quorum is there mentioned, and by the third section of the act of 1804, 5 *Stat.* 479, a notary public is declared to be, *ex officio,* a justice of

the quorum, and, therefore, as such, he could take a renunciation of inheritance.

The next objection, however, is more formidable, and, in fact, is, in our judgment, fatal. It appears in this case, that the renunciation was taken *within seven days*, after the execution of the deed, and not " *after the expiration of seven days,*" as the statute expressly requires—the deed bearing date on the fifth, and the renunciation on the twelfth of the same month ; and we are unable to see by what authority we can dispense with this positive statutory requirement, by any forced construction. The deed having been executed on the fifth, and the law taking no account of fractions of a day, the renunciation could not legally be taken until after the expiration of seven days, and this could not be until after the expiration of the last moment of the twelfth, and hence if taken at any time during that day, it would be *before,* and not *after,* the expiration of seven days. *Bruce* v. *Perry,* 11 *Rich.* 121.

But there is still another fatal defect in this renunciation of inheritance. The statute requires that an addition to the certificate, shall " invariably " be made, to the following effect, to wit : " That the woman did declare that the release was positively and *bona fide* executed at least seven days before such her examination." No such addition was made to the certificate here in question, and, indeed, could not have been truthfully made, as the seven days had not expired, and certainly no court would undertake to dispense with that which a statute declares shall " invariably " be done.

As to the other objection, based upon a failure to record the renunciation of inheritance during the life-time of the married woman, we do not think it can be sustained. It is true that the language used in the statute—" Such renunciation shall not be considered as being complete or legal until the same shall be recorded "—is very strong, but not stronger than the language used in the marriage settlement act, under which it has been held that such a deed is good without being recorded, not only between the parties but also as to all persons having notice of it. *Fowke* v. *Woodward, Spears Eq.* 233 ; *Gibbes* v. *Cobb,* 7 *Rich. Eq.* 54.

Hence, whatever may have been our view if the question was *res integra*, yet since the case of *Kottman* v. *Ayer*, 1 *Strobh*. 552, overruling *Hillegas* v. *Hartley*, 1 *Hill Ch*. 106, expressly recognized in the recent case of *Campbell* v. *Moon*, 16 *S. C*. 107, we think it has been conclusively settled that the object of recording is notice, and where persons have notice, as the parties to an instrument always have, a failure to record it does not invalidate the instrument. As to absolute conveyances under the act of 1785, see *Tart* v. *Crawford*, 1 *McCord* 265; *McFall* v. *Sherrard*, *Harp*. 296; *Knotts* v. *Geiger*, 4 *Rich*. 34; *Ingrem* v. *Phillips*, 3 *Strobh*. 565. As to a mortgage *of real estate under the act of 1785, see *Martin* v. *Sale*, *Bailey Eq*. 4. As to mortgage of personalty under act of 1698, see *Bank* v. *Gourdin*, *Spears Eq*. 439. As to renunciation of inheritance, see *Kottman* v. *Ayer*, *supra*; *Campbell* v. *Moon*, *supra*. As to a lease under the act of 1817, see *Anderson* v. *Harris*, 1 *Bailey* 315. As to marriage settlements under the act of 1785 and 1792, see *Givens* v. *Branford*, 2 *McCord* 152; *White* v. *Palmer*, *McMull*. *Eq*. 115. As to marriage settlements under act of 1823, see *Fowke* v. *Woodward*, *supra*; *Gibbes* v. *Cobb*, *supra*. As to agricultural liens under the act of 1866, see *Loyns* v. *Tedder*, 7 *S. C*. 69. These cases have so conclusively settled the rule in this State as to the object of recording, that in the face of them we do not feel at liberty to say that a failure to record a renunciation of inheritance renders it invalid as to persons having actual notice of it.

The only remaining question is that raised by the third ground of appeal. We agree with the Circuit judge that, if the deed to Edwards was intended to be a simple power of attorney, the clause of warranty contained in it would not operate as a bar to the right of James A. Wingo to recover his share of the land as one of the heirs of his deceased wife; but that, if the deed was intended as an absolute conveyance, then such conveyance, by virtue of this warranty, would operate, by way of estoppel, as a transfer of the title subsequently acquired by him, upon the principles established by the cases of *Reeder* ads. *Craig*, 3 *McCord* 411; *Harvin* v. *Dodge*, *Dudley* 25, recognized in *Starke* v. *Harrison*, 5 *Rich*. 7.

If, therefore, the deed was intended as an absolute conveyance,

although Wingo, at the time it was executed, only had an estate during coverture, yet, by virtue of the principles and authorities above stated, the estate which he subsequently acquired as an heir of his wife would pass. But if the deed was only intended as a power of attorney, it is difficult to conceive how any estate could pass under it, either the estate which he had at the time or that which he subsequently acquired as heir of his wife. We concur also with the Circuit judge that until the heirs or devisees of Edwards were made parties or released any interest they might have, it was not proper to determine the question as to the character of the deed.

The judgment of this court is that the judgment of the Circuit Court be affirmed.